AO 91 (Rev. 11/11) Criminal Complaint



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CASE NUMBER: 24CR159 |
| URIEL MONARREZ GALLARZO | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about March 26, 2024, at Bolingbrook, in the Northern District of Illinois, Eastern Division, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 846 | Did attempt to knowingly and intentionally possess with intent to distribute a controlled substance, namely, five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

ERIC LUNA
Special Agent, Drug Enforcement Administration (DEA)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: March 27, 2024

_Judge's signature_

City and state: Chicago, Illinois

SHEILA FINNEGAN, U.S. Magistrate Judge
_Printed name and title_

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## **AFFIDAVIT**

I, ERIC LUNA, being duly sworn, state as follows:

1.      I am a Special Agent with the Drug Enforcement Administration and have been since approximately January of 2018.  I am currently assigned to the DEA Chicago Field Division and my current responsibilities include the investigation of narcotics trafficking offenses.

2.      As part of my duties as a DEA Special Agent, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of federal controlled substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963.  I have been involved with various electronic surveillance methods and the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage and importation of controlled substances.

3.      This affidavit is submitted in support of a criminal complaint alleging that URIEL MONARREZ GALLARZO ("MONARREZ GALLARZO") has violated Title 21, United States Code, Section 846.  Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging MONARREZ GALLARZO with attempting to knowingly and intentionally possess with intent to distribute a controlled substance, namely, five

kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), in violation of Title 21, United States Code, Section 846, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

4. This affidavit is based on my personal knowledge, information provided to me by other law enforcement officials, my training and experience, and the training and experience of other law enforcement officials with whom I have consulted.

## FACTS SUPPORTING PROBABLE CAUSE

5. On or about March 26, 2024, at approximately 10:15 a.m., UC-1 received a photograph depicting the telephone number of a person who UC-1 understood was the phone number of a person who wished to obtain approximately 30 kilograms of cocaine from UC-1. Thereafter, at approximately 12:20 p.m., UC-1 received a second phone number ending in 1034 as the contact for the narcotics transaction (the "MONARREZ GALLARZO Phone").[1] At approximately 1:00 p.m., UC-1 spoke to MONARREZ GALLARZO over the MONARREZ GALLARZO Phone,[2] and they

---

[1] The identification of MONARREZ GALLARZO as the user of the MONARREZ GALLARZO Phone is based in part on the following: (1) I have compared the voice of MONARREZ GALLARZO, who I met on approximately March 26, 2024, to the voice of the person who used the MONARREZ GALLARZO Phone, and the voices appear to be the same; and (2) when MONARREZ GALLARZO was taken into custody, he possessed a cellular phone. On approximately March 27, 2024, law enforcement officials placed a call to the MONARREZ GALLARZO Phone, and the phone rang.

[2] The communications between UC-1 and MONARREZ GALLARZO were recorded. The summaries of the communications are based on a review of those communications by law enforcement officials. The language that is quoted from those conversations throughout this

agreed to meet in the parking lot of Business A located on the 500 block of South Bolingbrook Drive in Bolingbrook, Illinois (the "Business A Parking Lot"). During their conversation, MONARREZ GALLARZO told the UC-1 that he would arrive at the meeting location in approximately 45 minutes. At approximately 1:45 p.m., MONARREZ GALLARZO called UC-1 and told UC-1 that he was approximately 10 minutes away from the meeting location, and that MONARREZ GALLARZO was driving a green-colored Nissan.

6.     At approximately 1:55 p.m., a green Nissan Versa (the "Nissan") drove to the Business A Parking Lot.[3] At about this same time, UC-1 received a call from MONARREZ GALLARZO, using the MONARREZ GALLARZO Phone. During their conversation, MONARREZ GALLARZO told UC-1 that he was in the Business A Parking Lot. A short time later, UC-1 drove to the Business A Parking Lot with two duffle bags containing approximately 30 kilograms of sham cocaine. UC-1 walked

---

affidavit is based upon a preliminary review, not final transcripts or interpretations, of the conversations. The times listed for the recorded conversations are approximate. The summaries do not include all potentially criminal communications or topics covered during the course of the recorded communications. In certain instances, I will offer my interpretations of certain communications. My understanding of these communications is aided by the content and context of the communications, my familiarity with the facts and circumstances of the investigation, my experience as a law enforcement agent, my discussions with other law enforcement officials in this investigation, and other evidence developed during the investigation. In addition, communications between UC-1 and MONARREZ GALLARZO herein were in the Spanish language. For these communications, I have relied upon draft – not final – English translations of communications in Spanish done by agents for the DEA.

[3]     The Nissan bore registration EH80961 and is registered to MONARREZ GALLARZO at an address in Hillside, Illinois.

to the Nissan, saw MONARREZ GALLARZO in the driver's seat, and placed both duffle bags containing 30 kilograms of sham cocaine into the back seat of the Nissan.

7.     At approximately 1:59 p.m., the Nissan departed the Business A Parking Lot followed by law enforcement surveillance.  At approximately 2:06 p.m., the Illinois State Police ("ISP") conducted a traffic stop on the Nissan while it traveled northbound on Interstate 355 near the 75th Street exit near Woodridge, Illinois.  The ISP observed that MONARREZ GALLARZO had committed a traffic violation by engaging in improper lane usage by crossing the lane boundary unsafely. During the traffic stop, MONARREZ GALLARZO gave the ISP verbal consent to search the Nissan.  At approximately 2:08 p.m., a canine officer searched the Nissan and seized the two duffle bags containing the approximately 30 kilograms of sham narcotics from the back seat area of the Nissan.[4]

8.     Law enforcement officials took MONARREZ GALLARZO into custody, and MONARREZ GALLARZO agreed to identify for law enforcement officials the location of his residence.  Law enforcement officials drove MONARREZ GALLARZO to an apartment in Melrose Park, Illinois, that MONARREZ GALLARZO identified as his residence.  At approximately 4:19 p.m., law enforcement officials read MONARREZ GALLARZO his *Miranda* rights, and MONARREZ GALLARZO agreed

---

[4]     Thereafter, a K-9 sniffed the rear area of the Nissan and alerted positively to the presence of narcotics.  Based on my training and experience, and the training and experience of other law enforcement officials, a positive K-9 alert may result from, among other things, the prior transportation or use of narcotics in the vehicle.

orally and in writing to speak to law enforcement officials without an attorney present.

9.     During his post-*Miranda* interview with law enforcement officials, MONARREZ GALLARZO stated that he knew he was going to grab a "load" from UC-1, which based on my training and experience, referred to a bulk amount of narcotics.  MONARREZ GALLARZO initially stated that he did not know what type of narcotic he was obtaining from UC-1, but upon further questioning stated that, when he saw UC-1 placing the duffle bags in the back seat area of his Nissan, he knew through past experience that the substance was cocaine due to its apparent heavy weight.

10.     During the interview, MONARREZ GALLARZO further stated that he did not know how much money he was going to get paid for the narcotics transaction, but he expected to be paid a portion of the narcotics proceeds earned once the 30 kilograms of cocaine were sold for further distribution.  Additionally, when asked about the street value of one kilogram of cocaine in the Chicagoland area, MONARREZ GALLARZO responded that the street value is approximately $15,000 to $20,000 per kilogram.

11.     MONARREZ GALLARZO further stated that he had conducted a similar narcotics transaction approximately one month ago, when he obtained a suitcase containing several kilograms of cocaine from an unidentified person. MONARREZ GALLARZO then delivered the cocaine to another unidentified person at a gas station located in Melrose Park, Illinois.

## CONCLUSION

12.    Based on the foregoing, there is probable cause to believe that, on or about March 26, 2024, URIEL MONARREZ GALLARZO did attempt to knowingly and intentionally possess with intent to distribute a controlled substance, namely, five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), in violation of Title 21, United States Code, Section 846.

FURTHER AFFIANT SAYETH NOT.

ERIC LUNA
Special     Agent,     Drug     Enforcement Administration

SWORN TO AND AFFIRMED by telephone March 27, 2024.

Honorable SHEILA FINNEGAN
United States Magistrate Judge